S. P. HALPERN, Appellant, v. NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, a Corporation, Respondent.

(216 N. W. 209.)

**Insurance — terms and conditions of an insurance policy, binding.**

1. A mortgagee of insured premises is bound by the terms and conditions of the insurance policy, in the absence of a special contract with him.

**Trial — verdict — surplusage.**

2. Where a jury by its general verdict unconditionally determines the issues submitted to it, but attaches a clause regarding a matter not involved in the suit, such clause is properly rejected as surplusage.

Opinion filed November 4, 1927.   Rehearing denied November 26, 1927.

Fire Insurance, 26 C. J. § 173 p. 146 n. 95, 2; § 234 p. 191 n. 65.   Trial, 38 Cyc. p. 1890 n. 56.

Appeal from the District Court of Morton County, *Berry,* J. Affirmed.

*S. P. Halpern* and *C. F. Kelsch,* for appellant.

The burden of proving that there has been a cancelation of the policy rests upon the party asserting the same.   26 C. J. 148.

As a general proposition of law, a cancelation by the assured by a voluntary surrender of the policy without the mortgagee's consent, will not affect his rights.   26 C. J. 145, note 80; L.R.A.1915C, 758.

"That the rights of the mortgagee are unaffected by the act of the owner in selling the premises, for the reason that such condition was not written upon, attached or appended to, the provision by which her interest was created."   Edge v. St. Paul F. & M. Ins. Co. (S. D.) 105 N. W. 221.

"In the absence of knowledge brought home to the plaintiff, the assured, that the proposition of the defendant insurance company was

Annotation.—(1) Effect of breach of policy of insurance by mortgagor on rights of mortgagee, see annotation in 18 L.R.A.(N.S.) 197; 19 A.L.R. 1449; 38 A.L.R. 367; 48 A.L.R. 124; 14 R. C. L. 1037, 1038; 3 R. C. L. Supp. 332; 4 R. C. L. Supp. 936; 6 R. C. L. Supp. 851.

to cancel otherwise than in accordance with the terms of the policy acquiesced in by the plaintiff, the assured, it must be held that the notice of cancelation was insufficient, not in accordance with the terms of the policy, and that the written evidence was insufficient to show a cancelation by mutual consent." North Pine Crating Co. v. London, L. & G. Ins. Co. (Wis.) 128 N. W. 70.

A failure to return the unearned premium or the note representing the same, renders the attempted cancelation void, and it does not make any difference whether the cancelation attempted is by notice or by agreement. Bradshaw v. Philadelphia Ins. Co. 89 Minn. 334; Grant Lumber Co. v. North River Ins. Co. 253 Fed. 83.

A mere notice of the insurer's readiness or willingness to return the premium or that it will be returned, is insufficient. Van Valkenburg v. Lenox F. Ins. Co. 51 N. Y. 465.

*Sullivan, Hanley, & Sullivan,* for respondent.

A loss payable clause is not even notice to the insurance company that the payee holds a chattel mortgage on the property. Woods v. Insurance Co. 144 Pac. 650.

"Surplusage does not vitiate a verdict and will be disregarded in entering a judgment on the verdict or in construing it." 25 Standard Enc. Proc. 976; Wante v. Rue, 197 N. W. 766.

BURR, J. Plaintiff sues to recover on a fire insurance policy issued by the defendant to one W. S. Dunham. The complaint is in ordinary form. The defendant alleges that a note was given for the premium on the insurance policy, and not paid; that the policy was delivered to it "for cancelation;" and, "thereafter, and after due notice of its intention to cancel said policy had been given by the defendant in accordance with the terms of said policy . . . on or about the 16th day of May 1923 . . . the defendant cancelled said policy and offered to return the said note given therefor. . . ." The material facts are as follows: D. was indebted to one Jacob Halpern in the sum of $1,200 which was secured by a mortgage upon certain real estate with farm buildings thereon; D. applied to the bank for an insurance policy on the buildings and the application provided "loss, if any, payable to Jacob Halpern, mortgagee. Mortgagee's address, Hebron, N. D." The application had this rubber stamp statement:

"Notice accepted of an incumbrance of $1,200 on premises herein described." On July 28, 1922, the policy was issued for the period of three years, with premium of $33.75. Among the buildings insured was a barn with insurance of $300. The policy contains this provision, among others, "Loss payable clause. Any loss under this policy that may be proved due the insured shall be payable to the insured and Jacob Halpern, Hebron, North Dakota, subject, nevertheless, to all the terms and conditions of the policy." This policy had the same form of rubber stamp statement as appeared on the application. No mortgagee clause was attached to the policy as a separate and distinct contract. Among the terms and conditions of the policy are "this policy shall be cancelled at any time at the request of the insured; or by the company by giving five days notice of such cancellation;" further, "if, with the consent of this company, an interest in this policy shall exist in favor of a mortgagee . . . the condition hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto." The policy also states that it is "based upon insured's application and survey of the property on file, and dated July 28th, 1922, which is hereby referred to as forming part of this policy." The application contains the provision "If a note . . . be given for the whole . . . of the premium for any policy issued for the insurance hereby applied for, in case said note be not paid at maturity the policy shall lapse, and the same shall be suspended, inoperative and of no force or effect so long as such note, or any part thereof remains overdue and unpaid. And in case of any loss on said property, either partial or total, while such note, or any part thereof, remains overdue and unpaid, the Company shall not be liable for such loss. . . ." The undisputed facts .further show that D. gave his note for the premium due October 1, 1922, which note was never paid. On November 2, 1922, the insurance on the said buildings was increased $900 in amount, and D. was charged with the additional premium on the books of the agent. The defendant made several attempts to collect the note, and premium, and on or about the 9th day of November 1922, the insured told the company that the mortgagee should pay it. Defendant's agent notified the mortgagee that the company would cancel the policy if the

premium were not paid; but no reply was received from the mortgagee. The insured brought in the policy to the agent for flat cancelation— that is, the entire premium would be waived—and the policy was sent to the company on or about May 12, 1923 for flat cancelation and is endorsed on the back "cancelled flat;" but the note was never returned to the insured. On March 31, 1925 the barn was destroyed by fire, and notice of loss given to the defendant on April 13, 1925. On April 17, 1925 the defendant repudiated liability on the ground that the policy had been "duly cancelled." Both D. and Jacob Halpern assigned their claims to the plaintiff, before the commencement of this action. The jury found for the defendant in the following verdict: "We, the jury in the above entitled action find in favor of the Defendant and against the Plaintiff herein, *and demand that his note be returned*" (underlining ours). Judgment was thereupon rendered for the defendant and the plaintiff appeals.

The issues to be determined on this appeal involve: the right of the insured and the defendant to cancel the policy without the consent of Jacob Halpern, who is alleged to have had a mortgage upon the insured premises; whether such cancelation was in fact had; and, whether the verdict returned by the jury is a conditional verdict, so as to entitle the plaintiff to a new trial. It is the claim of the plaintiff that there is no proof of any notice of cancelation as required by § 6518 of the Code. The defendant says it does not rely upon said section, but upon the right of cancelation as set forth in § 6517 of the Code. The plaintiff says the answer does not predicate any right to cancelation under this section and that in any event there is no proof of cancelation, and no notice of intent to cancel was given to the mortgagee.

The quotation from the answer may be indefinite as to whether the defendant was relying upon the right of cancelation as given by § 6518, or on the right as given by § 6517. No application was made to have the answer made definite in this respect; but defendant, in the trial of the case specifically states it does not rely on any right as given by § 6518 but relies wholly upon the right of cancelation as given by § 6517. In the absence of an application to make it more specific it is clear the defendant in his allegations in his answer could rely upon the right of cancelation as given by § 6517.

The evidence shows an agreement for cancelation as made between the insured and the company. There is a definite showing that the insured left his policy with the agent of the company for safe keeping. Nevertheless, it was his policy and had been delivered to him. He shows that he decided on cancelation because of his inability to pay his premium, and he told the agent to send in the policy for cancelation. The policy was sent in to the company and was canceled. It is true the note was not delivered to the insured, but there is no evidence of any subsequent attempt to collect on the note. It is undisputed that the mortgagee was told of the failure to pay the note and demand was made on the mortgagee to pay the premium. The failure to deliver the note does not prevent the insured and the defendant from making a contract of cancelation under the provisions of § 6517. Section 6464 of the Code provides that in cases where an insured is a mortgagor of premises insured "the indebtedness is deemed to be upon the interest of the mortgagor, who does not cease to be a party to the original contract and any act of his which would otherwise void the insurance will have the same effect although the property is in the hands of the mortgagee." The property never came into the hands of the mortgagee; nevertheless the contract of insurance is the contract of the mortgagor—the insured—and whatever act he does to void the contract is binding, unless there be a special contract with the mortgagee, which we will notice later. The insured had a perfect right to abrogate his contract with the defendant. The plaintiff urges that while the policy may have been delivered up for cancelation nevertheless before there could be cancelation notice had to be given to the mortgagee. This is not correct, except so far as there is a contract with the mortgagee. Plaintiff claims there is in this case a contract with the mortgagee. It will be noticed that there is no mortgagee clause attached to this policy; that is, there is not one of these usual mortgagee clauses wherein there is a special contract made with the mortgagee. The reference to the mortgagee has been set forth in the statement of facts. It will be noted that any reference to the mortgagee in the policy is all subject to the rights of the insured and the defendant to cancel the policy by mutual consent "at any time at the request of the insured." It is true it may also be cancelled by "giving five

days' notice of such cancelation." This does not prevent it being canceled at the request of the insured. The mortgagee's rights to any payment under the policy is subject to this provision. The plaintiff cites numerous cases wherein it is held that a cancelation of a policy does not affect the rights of the mortgagee. For example, he cites the case of Edge v. St. Paul F. & M. Ins. Co. 20 S. D. 190, 105 N. W. 281. An examination of this case shows that there was this separate mortgagee clause attached: "loss, if any, made payable to . . . mortgagee, as her interest may appear. This slip is hereby attached to and made a part of policy #15,719. Aberdeen, S. D. Agency of, etc." and the court says the provision quoted from the policy dealing with "an interest in this policy . . . in favor of a mortgagee" means that with the mortgagee clause attached, the interest of the mortgagee could not be affected by the provisions and conditions of the policy except in so far as these provisions and conditions "were written upon, attached or appended . . ." to it. The mortgagee's interest is determined by the contracts made with him. In this case had there been a separate contract with the mortgagee attached to the policy then the mortgagee's interest could not be affected except under the terms and conditions set forth in that mortgagee clause. But here there is no special contract made with the mortgagee. There is an agreement as to disposition of avails, if any. This was to be paid to D. and Jacob Halpern, but whatever interest H. had was subject to the provisions and conditions of the policy. See May, Ins. 2d ed. 568.

Section 6517 is not limited to policies where the premiums have been paid. The plaintiff would draw such distinction between § 6517 and § 6518 as would limit cancelation for non-payment of notes to § 6518 entirely. There is nothing in the provisions of § 6517 to prevent the insured, because of his inability to pay his note, surrendering his policy for cancelation as was done in this case. There was no special contract with the mortgagee and the mortgagee was bound by whatever subsequent agreement was made between the insured and the company. No special agreement was violated by such surrender and cancelation. The fact that there was a notation in the policy of an incumbrance of $1,200 does not bind the company to recognize some one as mortgagee. No mortgagee is mentioned therein and it is

only from the application and by inference from the "loss payable clause" of the policy and allegations in the complaint that we learn Jacob Halpern was the mortgagee.

The remaining point deals with the form of the verdict. It is true the jury attached to the verdict the clause "and demand that his note be returned." The plaintiff had not given any note, and so we assume the jury referred to the note given by D., the insured, which had not been physically delivered to D. This added clause does not in any way affect the verdict. It is not a conditional clause. It is mere surplusage. As stated in 27 R. C. L. 853, if the jury "find the issue and something more, the latter part of the finding will be rejected as surplusage." The added words do not in any way qualify the verdict. The rule referring to surplusage is set forth in Statler v. United States, 157 U. S. 277, 39 L. ed. 700, 15 Sup. Ct. Rep. 616. In 29 Am. & Eng. Enc. Law 2d ed. 1026, it is said "when a jury find not only issues submitted to them but embrace in their verdict the determination of matters not involved in the controversy, these redundant matters are denominated surplusage." See also Marquard v. Wheeler, 52 Cal. 445.

"If the verdict of the jury goes beyond the issues raised by the pleadings, and passes upon an extraneous fact not embraced therein, it is void pro tanto and the surplus matter may be disregarded in entering the judgment."

See also North & South Street R. Co. v. Crayton, 86 Ga. 499, 12 S. E. 877; and McEldon v. Patton, 4 Neb. (Unof.) 259, 93 N. W. 938.

The jury does not find that there should be a verdict for the defendant in case he returns the note, and there is nothing to indicate the plaintiff in this case is entitled to the note. It is merely another instance of some jurors believing it their bounden duty "to do equity between the parties" upon their own motion of what the law and the facts are or ought to be. It is an addendum as innocuous as it is unnecessary.

It being shown by the record that the policy was duly cancelled on an agreement between the insured and the defendant long before any

liability thereunder was incurred the judgment of the lower court is affirmed.

BIRDZELL, Ch. J., and BURKE, CHRISTIANSON, and NUESSLE, JJ., concur.